IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NIGEL DWAYNE PARMS, DV-1551, )
    Petitioner, )
     )
    v. ) 2:-10-cv-987
     )
THE ATTORNEY GENERAL OF THE )
STATE OF PENNSYLVANIA, et al., )
    Respondents. )

MEMORANDUM and ORDER

MITCHELL, M.J.:

      Nigel Dwayne Parms, an inmate at the State Correctional Institution at Albion has presented a petition for a writ of habeas corpus. For the reasons set forth below, the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

      Parms is presently serving a five to fifteen year period of incarceration to be followed by a ten year period of probation imposed following his conviction by the court of attempted rape, aggravated indecent assault and corruption of minors at No. CP-02-CR-8388-1997 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on December 14, 1998.[1]

      Although the petitioner, pro se, filed an untimely notice of appeal, he subsequently filed a post-conviction petition, and on January 26, 2000, the post-conviction court reinstated his appellate rights *nunc pro tunc*.[2] In his appeal, the sole issue presented was:

> Whether the facts of this case required the sentence of aggravated indecent assault to be merged into the sentence of attempted rape?[3]

---

[1] See: Petition at ¶¶ 1-6. The sentencing court imposed the five to fifteen year sentence on the charge of attempted rape and a consecutive ten year period of probation on the aggravated indecent assault charge. No further penalty was imposed on the charge of corruption of minors (See: Answer at pp.15 and 24).
[2] See: Answer at p.36.
[3] See: Answer at p.75.

On June 26, 2001, the judgment of sentence was affirmed by the Superior Court.[4] A petition for allowance of appeal to the Pennsylvania Supreme Court was filed raising this same issue and on October 9, 2001, leave to appeal was denied.[5]

There then commenced an odyssey of frustration. On April 29, 2002, the petitioner filed a post-conviction petition.[6] Counsel was appointed to represent the petitioner on September 10, 2002, and he entered his appearance of October 7, 2002. No further action occurred. On April 29, 2004, Parms submitted another post-conviction petition; on May 11, 2004, he requested that prior appointed counsel be removed alleging abandonment by counsel, and requested that new counsel be appointed. Again nothing happened and on August 4, 2008 he filed another post-conviction petition. The instant petition was executed on July 23, 2010 and served on the respondents on August 16, 2010. On August 26, 2010, the Commonwealth moved the Court of Common Pleas to appoint counsel for the petitioner so that his post-conviction petition could be addressed. That motion was granted on September 15, 2010, the Office of Conflict Counsel was appointed to represent Parms and on October 6, 2010 an appearance of counsel was entered.[7]

It is provided in 28 U.S.C. §2254(b) that:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

---

[4] See: Answer at pp.121-127.
[5] See: Answer at pp.143, 172.
[6] See: Answer at pp.173-179.
[7] See: Answer at pp. 180, 185-210, 211-217 and 218-266 as well as the Court of Common Pleas docket sheet, CP-02-CR-8388-1997.

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.
> We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...
>
> A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or

unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

In the instant case, it would appear that for over eight years, Parms has been attempting to seek post-conviction relief in the courts of the Commonwealth only to have his efforts continuously frustrated. While it is true that the Commonwealth is now supporting Parms' efforts to have the latter matter disposed of, it is also true that it is the remedies and not the petitioner that should be exhausted. In <u>Lee v. Stickman</u>, 357 F.3d 338, 341 (3d Cir.2004) the Court reviewed instances in which it had determined that the delay had been excessive citing to <u>Wojtcak v. Fulcomer</u>, 800 F.2d 353 (3d Cir.1986)(33 month delay excessive); <u>Burkett v. Cunningham</u>, 826 F.2d 1208 (3d Cir.1987)(five year delay excessive); <u>United States ex rel. Senk v. Brierley</u>, 471 F.2d 657 (3d Cir.1973) (three and a half year delay excessive); <u>United States ex rel. Geisler v. Walters</u>, 510 F.2d 887 (3d Cir.1975)( three years and four months is excessive delay). In <u>Lee v. Stickman</u>, at 341 the Court further observed that "this ping-pong game the state court was playing with Lee's petition would almost be comical if Lee had not been in custody this entire time awaiting resolution" and concluded that while delay in exhaustion does not waive the exhaustion requirement, it shifts the burden to the Commonwealth to demonstrate why that requirement should still be imposed.

The Commonwealth appears to concede that the delay has been excessive, but requests that the petition here "be stayed until the state court is able to fully review the merits of Petitioner's PCRA petition…" The difficulty with this request is that eight and a half years have already elapsed, the petitioner is rapidly approaching his maximum sentence expiration date, and the orderly process in the state trial and appellate courts will easily consume at least another year.[8] For this reason, we conclude that a fundamental miscarriage of justice would arise from any further delay here, and proceed to the merits of Parms' claims.

The background to Parms' prosecution is set forth in the June 26, 2001 Memorandum of the Superior Court:

> The victim, who was five years old at the time of the incident, was playing with children at Mia Lewis' house, her next door neighbor. The victim testified that she went into the bathroom and encountered appellant, who pulled his pants down, got on top of her and put his "private part" on her "privates." She also testified that he put his hands on her "private parts" and spread "grease" on her

---

[8] The effective date of the imposed sentence was July 2, 1997. See: Answer at p.46.

private parts. The victim pointed to her genital area when asked to tell where her private parts were and also was able to point to where the male private parts were located on the body.

After the incident, the victim went home and told her mother that appellant had "done sexes on her." Her mother testified that she inspected the victim and found a greasy substance on her genital area. Appellant was arrested later that evening and gave the following statement to the police:

> I went to the bathroom. The girl was already there. I got the cream and touched her vagina. Then I put my penis on top of her vagina and I ejaculated on her. I put my fingers on her but I ejaculated on her vagina. It might have went a little bit into the vagina. My penis was right on the little folds of the vagina. I also tried to clean her up. I gave her some toilet paper to clean up. I don't know the girl's name but she is five years old. This happened this evening at Mia Lewis' apartment in Braddock. I used the cream that was in a red jar.

At trial, the appellant denied having assaulted the victim. Rather he testified that he was masturbating in the bathroom with his eyes closed. He stated that the victim entered without his knowledge and must have brushed against him before he knew she was there (transcript references omitted).[9]

In his petition Parms sets forth eight grounds upon which he contends he is entitled to relief:

1. Counsel was ineffective for failing to investigate petitioner's claim that his statement was coerced and his signature forged.

2. Counsel was ineffective for failing to investigate the conflict in the petitioner's statement with that of the victim in which he stated that she was in the bathroom whereas her statements alleges that he was in the bathroom and that she subsequently entered the bathroom.

3. Counsel was ineffective for failing to investigate conflicting police statements relative to the color of the jar from which grease was removed.

4. Counsel was ineffective for failing to address the victim's conflicting statements regarding whether she was naked, had only her underwear on, or had her underwear pulled half-way down her legs.

5. Counsel was ineffective for failing to address the conflicting lab reports one of which alleged that there was no presence of sperm, no abrasions of the labial area,

---

[9] See: Answer at pp.123-124.

no hymen tears, no seminal discharge and no evidence of sexual assault or abuse. While the second test performed six weeks later reached the opposite conclusion.

6. Counsel was ineffective for failing to explore exculpatory evidence from the victim's father [who was the petitioner's brother] who would have testified that there was not enough time for the crime to have occurred.

7. Inordinate delay in the state courts in disposing of his petitions.

8. Counsel was ineffective for failing to call petitioner's brother as a witness. His testimony would have disclosed that petitioner could not have committed the crime.

Thus, seven of the eight claims which the petitioner raises here concern the alleged ineffective assistance of counsel and one claim concerns delay in the state court proceedings.[10] In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

The petitioner's first claim is that counsel was ineffective for failing to investigate petitioner's claim that his statement to the police was coerced and his signature forged. Petitioner provides no information concerning what information, if any, would have been

---

[10] We note that this latter issue is indirectly addressed by the waiver of the exhaustion requirement here.

discovered through investigation which would demonstrate that his confession was coerced. Rather he just makes a bald unsupported assertion. As such his claim does not provide a basis for relief here. Zettlemoyer v. Fulcomer, 923 F.2d 284 (3d Cir.1992), cert. denied 502 U.S. 902 (1991). In addition, at the suppression hearing the petitioner conceded that the signature on the statement was his thus contradicting his allegation here that his signature was forged.[11]

The issue of coercion was fully explored at the suppression hearing where the police testified that the petitioner was advised of his Miranda rights; appeared to fully understand what he was doing; rejected the opportunity to have counsel present and that no force or threats were employed to secure the petitioner's statement.[12] After hearing the evidence, the trial court concluded that the statement was voluntary.[13] Clearly the record supports a finding that the petitioner was fully advised of his Miranda rights, was not subjected to any coercion and voluntarily made his confession. Thus, it was not obtained in violation of any federal standard.

Because there is nothing in the record to demonstrate that counsel was ineffective for failing to investigate any additional basis for suppressing petitioner's statement, counsel cannot be deemed constitutionally deficient for failing to pursue this matter.

The petitioner's second claim of ineffective counsel alleges counsel failed to investigate the conflict between the petitioner's statement and the testimony of the victim. At trial the conflicting evidence was presented to the court and determined adversely to the petitioner. As the finder of credibility the findings of the trial court are entitled to a presumption of correctness. 28 U.S.C. 2254(e)(1). Absent clear and convincing evidence, such presumption is not rebutted. Hunterson v. DiSabato, 308 F.3d 236 (3d Cir.2002). Since the evidence between the only two persons involved was conflicting and thus required a credibility determination, there was nothing for counsel to investigate, and he cannot be deemed ineffective for failing to do so.

Petitioner next contends that counsel was ineffective for failing to investigate the conflicting evidence as to whether the jar from which the lubricating jelly was removed was red or black. In his statement to the police, the petitioner stated that he removed

---
[11] See: Transcript of the Suppression hearing and non-jury trial held on March 30, 1998 at pp.36,40,104.
[12] Id. at pp. 10,12-14,16-17
[13] Id. at p.42.

7

cream to lubricate the victim from a red jar[14] while the prosecuting officer testified that the petitioner had indicated that he had removed the lubricant from a black jar.[15] Clearly this issue is irrelevant since it is not a conflict in any critical testimony but rather merely expresses some confusion about the color of the jar from which the lubricant was removed, an immaterial fact which would have no bearing on the outcome of the trial. For this reason, counsel's failure to pursue the matter further is of no consequence and does not demonstrate any deficiency in his performance.

The petitioner next contends that counsel was ineffective for failing to address conflicting testimony as to whether the victim was naked, in her underwear or had her underwear pulled half-way down her legs. This confusion arose out of the testimony of the victim who testified that she had her underwear on and that her panties were never removed; then testified that the petitioner pulled her panties down to mid-thigh level.[16] This apparent conflict might just represent confusion by the victim herself as to where her underwear was located, and any further investigation of this matter by defense counsel would have been fruitless, since only the victim herself and the petitioner who elected not to testify on the subject, would have had knowledge of the position of her panties. For this reason counsel's performance cannot be said to have fallen below an objective standard of reasonableness since under the circumstances all he could do was demonstrate conflicts in the evidence and there was nothing to investigate. Thus, this claim likewise does not present a basis for relief.

The petitioner next alleges that counsel was ineffective for failing to address conflicts in the lab report submitted immediately after the events and one submitted six weeks later which he contends were in direct conflict.

Immediately after the assault, on July 2, 1997, the victim was taken to Children's Hospital. An examination revealed no abrasions to the labial area or hymen tears and the absence of spermatozoa.[17] However, the victim was reexamined on August 18, 1997 at

---

[14] Id. at p.79.
[15] Id. at p.80.
[16] Id. at pp.66,69.
[17] Id. at p.83.

8

which time it was determined that "the findings were suspicious for sexual abuse."[18] This is the "conflict" about which the petitioner now complains.

This "conflict" was before the court for its consideration in rendering its verdict and despite this evidence the court concluded that the petitioner was guilty of certain of the charged offenses. During the course of the trial, the court was aware of the time delay between the two reports and concurred in defense counsel's argument that evidence of abuse is a vague term regarding an incident which could have occurred at any time and the prosecution stipulated to defense counsel's argument that at the initial examination there was no indication of sexual abuse.[19] Finally, defense counsel argued to the court that there was no evidence that the victim had sustained physical abuse at the time of the incident charged.[20]

The record is replete with defense counsel's arguing the difference between the two lab reports and the court's awareness of these differences. For this reason there is no basis to conclude that counsel failed to address the conflict or that his performance fell below an objectively reasonable standard, and provides no basis for relief here.

The petitioner's next argument and his final argument is that defense counsel's performance was constitutionally deficient when he failed to investigate a possible alibi defense from the victim's father who was also the petitioner's brother. At trial, Mia Lewis, the woman in whose home the assault occurred testified that the child's father was present in the home when the events occurred.[21] There is nothing to suggest that other than acknowledging his presence when the events occurred he could have offered any alibi evidence. An alibi under Pennsylvania law is testimony demonstrating impossibility of the defendant having committed the crime, such as placing him at a location different from the crime scene at the time in question. Comm.v. Poindexter, 646 A.2d 1211,1216 (Pa.Super.1994). Here, at best the petitioner's brother could only have placed the petitioner at the crime scene and according to the petitioner his testimony would have disclosed that the petitioner was not with the victim for an adequate amount of time for

---

[18] Id. at p. 85.
[19] Id. at pp.85-86.
[20] Id. at pp.26-27.
[21] Id. at pp.92,96.

9

the crime to have been committed. Similar testimony was presented by Mia Lewis[22] and so any additional testimony would merely have been cumulative. As such counsel cannot be deemed ineffective for failing to investigate a possible alibi defense from the victim's father.

The final basis for relief asserted by the petitioner is the delay by the state courts in disposing of his post-conviction petitions. As noted above, the petitioner appears to be correct in this argument since an inordinate amount of time has elapsed since he started pursuing those remedies. While it does appear that the delay has recently been brought to the attention of the state courts, and so as not to penalize the petitioner by this delay, the exhaustion requirement has not been imposed here. However, an examination of the merits of petitioner's claims discloses that they are patently frivolous.

Since it is clear that the petitioner's conviction was not obtained in any manner contrary to federal law as determined by the Supreme Court of the United States, nor involved an unreasonable application of those determinations, he is not entitled to relief here.

Accordingly, the petition of Nigel Dwayne Parms for a writ of habeas corpus will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

An appropriate Order will be entered.

---

[22] Id. at pp.98-99.

ORDER

AND NOW, this 6th day of December, 2010, for the reasons set forth in the foregoing Memorandum,

IT IS ORDERED that the petition of Nigel Dwayne Parms for a writ of habeas corpus is DISMISSED, and a certificate of appealability is DENIED.

s/ Robert C, Mitchell<br>
United States Magistrate Judge